MHN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re: Kasco                    )        07 C 7270
                                )
                                )        Hon. Charles R. Norgle

### OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is an appeal from a decision of the United States Bankruptcy Court. In a

Memorandum Opinion issued November 8, 2007, United States Bankruptcy Judge Hollis denied

the motion of Diamond Quest Realty, Inc. for relief from an automatic stay of its state court

proceeding against Dale and Diana Kasco.

District courts have jurisdiction to review decisions of the Bankruptcy Court pursuant to

28 U.S.C. § 158(a). When adjudicating bankruptcy appeals, district courts are to apply a dual

standard of review: the Bankruptcy Court's findings of fact are reviewed for clear error, while its

conclusions of law are reviewed *de novo*. In re Midway Airlines, 383 F.3d 663, 668 (7th Cir.

2004); In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002); In re Vita Corp., 380 B.R. 525, 526

(C.D. Ill. 2008).

After reviewing Judge Hollis' Memorandum Opinion pursuant to the standard articulated

by the Seventh Circuit, the court finds no error. Judge Hollis thoroughly and carefully analyzed

all the issues raised by the parties, and this court therefore affirms and adopts her well-reasoned

Opinion. A copy of Judge Hollis' Opinion is attached and incorporated herein. See Harney v.

Speedway Superamerica, LLC, 526 F.3d 1099 (7th Cir. 2008) (affirming and adopting the district

court's order) (Bauer, J.); Keri v. Bd. of Trs. of Purdue University, 458 F.3d 620 (7th Cir. 2006)

1

(affirming and adopting the district court's opinion) (Kanne, J.); <u>Housing Authority Risk</u>

<u>Retention Group, Inc. v. Chicago Housing Authority</u>, 378 F.3d 596 (7th Cir. 2004) (affirming

and adopting the district court's opinion) (Rovner, J.).

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: August 14, 2008

2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 06 B 16620 |
| | ) | |
| DIANA AND DALE KASCO, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | Judge Pamela S. Hollis |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Diamond Quest Realty, Inc.

Diamond Quest seeks modification of the automatic stay in order to proceed in state court

against Diana and Dale Kasco. For the reasons stated below, the motion is denied.

**BACKGROUND**

The Kascos own the real property at 77 Winslow Street in Park Forest, Illinois.

They failed to pay the 2002 real estate taxes assessed on this property. Consequently, on

or about May 17, 2004, Cook County sold the 2002 taxes to Diamond Quest.

In July 2006, Diamond Quest filed its petition for tax deed in the Circuit Court of

Cook County. Dale Kasco was served with notice of the tax deed proceeding on August

10, 2006, and Diana Kasco was served on September 20, 2006. The period of

redemption for the 2002 taxes was set to expire on December 18, 2006.

The Kascos filed this Chapter 13 bankruptcy case on December 15, 2006. They

did not name Diamond Quest as a creditor and Diamond Quest received notice neither of

the case nor of the Kascos' proposed Chapter 13 plan. However, the Kascos scheduled

Cook County Collector as a secured creditor and included a provision in their plan for

payment of the tax debt to the Cook County Collector. Their amended Chapter 13 plan

was confirmed on February 5, 2007.

On February 23, 2007, Diamond Quest moved for relief from the automatic stay, seeking permission to go forward in state court against the Kascos. The Kascos oppose the motion, taking the position that because their case was filed before the redemption period expired, the purchased property taxes are treated as a secured claim in bankruptcy and may be paid over the term of their Chapter 13 plan.

## LEGAL DISCUSSION

### Diamond Quest is a Creditor of the Kascos With a Claim That Can Be Treated In Bankruptcy.

The first question is whether Diamond Quest is a creditor in the Kascos' bankruptcy case. If it does not hold a claim, and is not a creditor, it is not bound by the Kascos' confirmed plan. See 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.")

A creditor is defined in the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (emphasis added). The Code defines "claim" as the

(A)     right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)     right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

11 U.S.C. § 101(5).

Diamond Quest cites Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co. for the proposition that the Bankruptcy Code defers to state law in determining

2

who is a creditor and who has a right to payment. ___ U.S. ___, 127 S. Ct. 1199, 1205 (2007) ("[W]hen the Bankruptcy Code uses the word 'claim' – which the Code itself defines as a 'right to payment,' 11 U.S.C. § 101(5)(A) – it is usually referring to a right to payment recognized under state law.").

Under Illinois law, a tax purchaser has no right to direct payment from a property owner. See A.P. Properties, Inc. v. Goshinsky, 714 N.E. 2nd 519, 522 (Ill. 1999). Since it does not hold a right to payment against the Kascos, argues Diamond Quest, it cannot be one of their creditors. Id. ("[T]he procedure set forth in the [Property Tax] Code establishes a debtor/creditor relationship between the purchaser and the county (see, e.g., 35 ILCS 200/21-240, 21-260 (West 1996)) and a debtor/creditor relationship between the county and the landowner (see, e.g., 35 ILCS 200/21-440 (West 1996)). Nowhere, however, does the Code establish such a relationship between the landowner and the purchaser.")

A later bankruptcy court decision relied on A.P. Properties in finding that a tax purchaser was not a creditor in bankruptcy. See In re Blue, 247 B.R. 748 (Bankr. N.D. Ill. 2000). The Blue court held that because the tax purchaser had no right to payment against the property owner, no debtor/creditor relationship existed. 247 B.R. at 751.

The court has reviewed Blue as well as A.P. Properties, and rejects Diamond Quest's position. A.P. Properties, on which Blue relies, is concerned with the debtor/creditor relationship under the Uniform Fraudulent Transfers Act. A.P. Properties is distinguishable because the Bankruptcy "Code (unlike the [Uniform Fraudulent Transfer] Act) encompasses more than just 'claims' arising out of a 'traditional creditor-debtor relationship.'" In re Commings, 297 B.R. 701, 708 (Bankr. N.D. Ill. 2003)

3

(citation omitted). See also In re Linnera Davenport, 268 B.R. 159, 167 (Bankr. N.D. Ill. 2001) ("We cannot misapply the holding from A.P. Properties so as to disregard application of the Code's definitions to the facts here which clearly show that by its successful bid at the tax sale, [the tax purchaser] obtained an enforceable obligation secured by [the debtor's] residence.").

Travelers restated the well-settled holding that "the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." 127 S. Ct. at 1205 (quotations omitted). But Travelers' holding must be read in harmony with another rule of law repeated frequently by the U.S. Supreme Court -- that a bankruptcy court shall use the broadest possible definition in determining whether a claim exists in a bankruptcy case. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991).

Even where no civil right for money exists against the debtor, some consequence, such as loss of probation, is sufficient to create a debtor/creditor relationship. See Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552 (1990).[1] After all, Congress contemplated that "all legal obligations of the debtor . . . will be able to be dealt

---

[1] Although Congress overruled Davenport, the Supreme Court subsequently noted that Davenport's statements regarding the broad definition of claim are still valid:

> [W]e held in Davenport that restitution orders imposed as a condition of probation in state criminal proceedings were "claims" dischargeable in a Chapter 13 reorganization. See 495 U.S. at 558-560, 110 S. Ct. 2126, at 2130-2132. Congress subsequently overruled the result in Davenport. See Criminal Victims Protection Act of 1990, Pub.L. 101-581, § 3, 104 Stat. 2865. It did so, however, by expressly withdrawing the Bankruptcy Court's power to discharge restitution orders under 11 U.S.C. § 1328(a), not by restricting the scope of, or otherwise amending, the definition of "claim" under § 101(5).
> Consequently, we do not view the Criminal Victims Protection Act as disturbing our general conclusions on the breadth of the definition of "claim" under the Code.

Johnson, 501 U.S. at 83, n.4.

4

with in the bankruptcy case." H.R. Rep. No. 95-595, p. 309 (1977); U.S. Code Cong. &

Admin. News 1978, p. 6266, quoted in <u>Davenport</u>, 495 U.S. at 558.

As the <u>Commings</u> court explained, among the legal obligations that will be dealt

with in the bankruptcy case

> is one enforceable solely against the debtor's property – an in rem right.
> Section 102(2) makes clear that a 'claim against the debtor' includes a
> 'claim against the property of the debtor.' 11 U.S.C. § 102(2). Citing
> section 102(2), and noting the Code's broad definition of 'claim,' the
> Court in <u>Johnson</u> held that a mortgage holder had a 'claim' against the
> debtor-mortgagor even though the debtor's personal liability on the debt
> had been discharged in an earlier bankruptcy. <u>Johnson</u>, 501 U.S. at 84,
> 111 S. Ct. 2150. The Court reasoned that the mortgagee still had a 'right
> to payment' consisting of 'its right to the proceeds from the sale of the
> debtor's property.'

<u>Id.</u> at 707.

The same reasoning applies in the instant case and leads to the inevitable

conclusion that a tax purchaser is a creditor in the property owner's bankruptcy case. If a

debtor fails to redeem his taxes, he can lose the real property on which those taxes were

assessed. A tax purchaser's enforceable right to obtain the real property by way of a tax

deed if no redemption takes place is an <u>in rem</u> right.

Possession of an <u>in rem</u> right against property owned by a debtor in a bankruptcy

case -- a right provided by state law, which <u>Travelers</u> reminds us "governs the substance

of claims" -- gives the tax purchaser a claim in the bankruptcy. <u>Travelers</u>, 127 S. Ct. at

1205. Consequently, the tax purchaser is a creditor in the bankruptcy case, and Diamond

Quest is a creditor of the Kascos. <u>See also</u> <u>In re Murray</u>, 276 B.R. 869 (Bankr. N.D. Ill.

2002); Linnera <u>Davenport</u>, 268 B.R. at 167.

**Diamond Quest's Claim May Be Paid During the Term of the Confirmed Chapter
13 Plan, Even Though the Redemption Period Expired Shortly After Confirmation.**

Having determined that Diamond Quest is a creditor with a claim that can be

treated in the Kascos' bankruptcy case, another issue faces the court. Must Diamond

Quest be fully paid by the end of its redemption period, as it would outside of

bankruptcy? Or may the Kascos pay Diamond Quest in installments over time, as they

intend to do with all of the other claims for which distribution is being made under their

confirmed Chapter 13 plan?

### The Role of Section 108 in Chapter 13

Diamond Quest argues that pursuant to 11 U.S.C. § 108(b)(2), the Kascos' right

to redeem was extended only sixty days from the date of the filing of the petition, to

February 16, 2007. Since Diamond Quest was not fully paid by that date, there was no

redemption and the Kascos have lost the right to pay the tax debt.

Diamond Quest cites several cases in support of its argument that a debtor cannot

use Chapter 13 to redeem taxes during the life of a plan. With one exception, none of

these cases address the exact issue facing the court today. For example, the debtor in In

re McKeever, 132 B.R. 996 (Bankr. N.D. Ill. 1991), filed for relief under Chapter 7.

While the debtors in In re Bequette sought relief under Chapter 13 and scheduled the

county with a tax claim, Bequette resolved a motion for summary judgment in an

adversary brought by the Chapter 13 Trustee and the bank that held a secured claim on

debtors' real estate. The opinion focused on the tax purchaser's actions in obtaining a tax

deed after the redemption period expired, and contained absolutely no discussion of

whether it would have been proper to pay the tax claim through the Chapter 13 plan. 184

B.R. 327 (Bankr. S.D. Ill. 1995). See also Linnera Davenport, 268 B.R. 159 (taxes paid

6

in full prior to expiration of 60 day extension); <u>Jackson v. Midwest Partnership</u>, 176 B.R.

156 (N.D. Ill. 1994) (no mention of whether a plan was filed or confirmed); <u>In re Butler</u>,

171 B.R. 321 (Bankr. N.D. Ill. 1994); <u>In re Rich</u>, 1994 WL 527161 (Bankr. N.D. Ill. May

25, 1994) (in both <u>Butler</u> and <u>Rich</u>, the redemption period expired prepetition). Only <u>In

re Stewart</u>, 190 B.R. 846 (Bankr. C.D. Ill. 1996), specifically held that a debtor may not

redeem a tax debt by making periodic payments over the term of a confirmed Chapter 13

plan.

However, a recent bankruptcy decision explained why <u>Stewart</u> and Diamond

Quest are wrong to conclude that § 108(b) limits "a debtor's ability to modify a tax

buyer's claim in Chapter 13 to nothing more than a 60-day extension of the deadline to

pay the claim in full." <u>In re McKinney</u>, 341 B.R. 892, 899 (Bankr. C.D. Ill. 2006).

> In order to understand why that view is erroneous, it is helpful to review how the issue was dealt with under the Bankruptcy Act. Under the Act, it was accepted that the provision for an extension of time which was the predecessor to Section 108(b) did not undermine a debtor's ability to reorganize. . . .
>
> The [second] sentence of Section 11(e) of the Act, added in 1938, was intended to allow the trustee or receiver extra time to take any necessary steps to preserve for the estate, rights which might otherwise be lost. . . . In general, Section 11(e) was characterized as extending the time for taking a 'procedural step.'
>
> Section 11(e) did not operate to cut off a trustee's or debtor's ability, in a reorganization case, to pay a secured claim in a plan notwithstanding postpetition expiration of a state law redemption period. . . .
>
> "In straight bankruptcy, where the ultimate purpose is liquidation of the estate, §11 provides a beneficial grace period – a grant of extra time within which to take action. In chapter X, where the purpose is rehabilitation of a going business, a period of grace is not needed. The Act itself provides all the time required. The second sentence of § 11(e), then, when applied to chapter X, converts itself into a drastic limitation upon the power of the court to protect the property of the debtor in the manner contemplated by and for the purposes of the Act."

7

McKinney, 341 B.R. at 899-900, quoting In re Thomas J. Grosso Inv., Inc., 457 F.

2nd 168, 173 (9th Cir. 1972) (citations omitted).

Indeed, the Seventh Circuit recognized in the context of a Chapter 11

reorganization that "[t]he purpose behind section 108(b) is to permit the debtor an

extension of time for doing certain acts necessary to preserve his rights. It would be

anomalous to apply it to restrict debtors' rights . . .". Moody v. Amoco Oil Co., 734 F.

2nd 1200, 1216 (7th Cir. 1984). McKinney elaborates on that point:

> For a Chapter 7 trustee, who has no power to reorganize or modify claims,
> the state law right to redeem property from a tax sale is the sole procedure
> available to save the equity value in such property for the benefit of the
> estate. The 60-day extension of time provided by Section 108(b) at least
> gives the trustee a chance to redeem in order to preserve the estate's
> interest. A Chapter 7 trustee has no other options.
>
> Not so in Chapter 13 where the debtor has the power to modify claims in a
> plan. A Chapter 13 debtor doesn't need Section 108(b) because he is not
> exercising the right to redeem under state law. Instead, the debtor is
> exercising a right accorded by federal bankruptcy law, which preempts
> contrary state law.

McKinney, 341 B.R. at 901.[2]

### The Kascos Are Paying a Secured Claim Over Time Rather Than Exercising A Right to Redeem

As McKinney explains, the reason that the Kascos are not restricted by § 108(b),

and why they may use Chapter 13 to pay the tax debt over time, is that they are not

exercising their right to redeem. Instead, they are using their Chapter 13 plan to pay a

secured claim over time, as they are entitled to do because § 1322(b)(2) provides Chapter

13 debtors the right to modify claims.

---

[2]    The court notes that the Kascos filed and confirmed their plan prior to expiration of the
redemption period. The court has not considered whether a plan confirmed after expiration of the extended
redemption period would compel a different result.

Diamond Quest's key mistake is in assuming that by paying their tax debt through their Chapter 13 plan, the Kascos are exercising a right to redeem under state property tax law rather than a right to modify claims under bankruptcy law. Having made that erroneous assumption, Diamond Quest concludes that Colon v. Option One Mortgage, 319 F. 3rd 912 (7th Cir. 2003) controls. According to Colon, if real property is sold at a sheriff's sale prior to commencement of a Chapter 13 case, debtors have no right to cure a mortgage default through a plan.

Diamond Quest's assumption is faulty, and its resulting reliance on Colon is therefore misplaced. In Colon, the Seventh Circuit struggled to define the mortgage redemption period in Illinois, conscious that in some instances the state period to redeem might expire before the foreclosure sale. The Circuit made it clear that even if the state redemption period expired prior to the foreclosure sale, the Bankruptcy Code extended the time in which a debtor could cure an arrearage until the sale actually occurred. This was so because bankruptcy law trumps state law, and in § 1322(c)(1) the Code "provides a statutorily protected right to cure at least until the foreclosure sale. . .". Colon, 319 F. 3rd at 920.

The Circuit noted that the legislative history to § 1322(c)(1) indicates that this provision allows debtors "to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive 'cure' rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy." 319 F. 3rd at 918, quoting 140 Cong. Rec. H10,769 (daily ed. Oct. 4, 1994) (remarks of Rep. Jack Brooks) (emphasis added), reprinted in E Collier on Bankruptcy, App. Pt. 9(b), at 92 (15th ed.

9

rev'd 2002). So when <u>Colon</u> stated that "the states have the last word in determining the scope of the right of redemption," that statement was made in the context of redemption rights afforded by the states that were <u>greater</u> than those provided by the Bankruptcy Code. <u>Id.</u> at 918.

But in Illinois, debtors generally have a shorter period for cure than that provided by the Bankruptcy Code. Since the Bankruptcy Code trumps state law unless state law gives more rights, Illinois debtors must receive a greater cure right in their bankruptcy case than do non-bankruptcy debtors. Consequently, Illinois bankruptcy debtors do not lose ownership of their homes until the foreclosure sale. Once the sale occurs, however, they have no title to the real property, and thus no secured claim or mortgage to cure.

<u>Colon's</u> holding has no application in the tax sale context, however, because after a tax sale, the debtor <u>still has title</u> to the real property and <u>still possesses certain rights</u> regarding that real property. A tax purchase certificate does not operate to transfer title. <u>See Petition of Conrad Gacki Profit Sharing Fund</u>, 261 Ill. App. 3rd 982, 984 (Ill. App. Ct. 1994) ("The holder of a tax sale certificate has no right to possession of land or title until after the redemption period expires, and, therefore, owns something less than title in fee.").

Diamond Quest asserts that the failure to redeem a mortgage rather than outstanding taxes "is a distinction without a difference and a contorted effort to reach a desired result. A redemption by any other name or style is still a redemption."

In fact, as Judge Wedoff explained with reference to an older Seventh Circuit decision, Diamond Quest is improperly minimizing the differences between the mortgage foreclosure process and the tax sale process:

10

> Decisions denying the right to modify the secured claim of a tax purchaser often refer to the Seventh Circuit's decision in <u>Goldberg v. Tynan</u> (In re Tynan), 773 F. 2nd 177 (1985). <u>Tynan</u> was a case involving a home mortgage, subject to the anti-modification provision of § 1322(b)(2), and so the debtor's Chapter 13 plan was required to provide for 'cure' of the mortgage default. The Seventh Circuit held that, under former Illinois mortgage law, this right to cure ended at the time of a mortgage foreclosure sale, since, at that time, 'there is no "mortgage" under which a Chapter 13 debtor can cure arrearages.' 773 F. 2nd at 178. Thus, there was no way to treat the mortgage claim under the Bankruptcy Code, and the court held that the debtor was limited to exercising the relevant non-bankruptcy right of redemption accorded by state law, as extended by § 108(b) in bankruptcy. <u>Id.</u> at 179. **<u>This holding has no application to the situation of a property tax claim following an Illinois tax sale. The issue here is the right to modify a secured claim, not to cure a mortgage default</u>**, and, as set forth above, there is a claim outstanding in connection with a tax sale that is subject to treatment in bankruptcy.

<u>In re Bates</u>, 270 B.R. 455, 467, n.7 (Bankr. N.D. Ill. 2001) (emphasis added).

As Judge Wedoff stated in <u>Bates</u>, "[a]s long as the redemption period has not expired prior to the bankruptcy filing, there is a claim that can be treated during the bankruptcy case . . . [through] plan treatment in Chapter 13 – even though the redemption period expires during the pendency of the case." 270 B.R. at 467.

A tax purchaser's rights are not brushed aside with plan confirmation. Section 1325(a)(5) insures that the tax lien remains in place during the pendency of the plan.

> Thus, if the debtor fails to make the required plan payments, the tax purchaser may enforce its state law rights. Moreover, the right to a deed is not defeated by any bankruptcy-imposed delay. Although Illinois law requires that a tax purchaser obtain and record a tax deed within one year after the redemption period expires, this period is tolled during any time that the purchaser is 'prevented from obtaining a deed by injunction or order of any court.' 35 ILCS 200/22-85. Moreover, § 108(c) of the Bankruptcy Code extends, until 30 days after the expiration of the automatic stay, the time for taking any action required by non-bankruptcy law to commence or continue a civil action on a claim against the debtor. Under both Illinois law and the Bankruptcy Code, then, a tax purchaser would be able to obtain a deed if its claim was not paid through the debtor's Chapter 13 plan.

270 B.R. at 468-469. Consequently, Diamond Quest retains certain protections should the Kascos fail to make full payment through their plan.

Diamond Quest is a creditor who is bound by the confirmed plan, and as its interests are adequately protected, relief from the automatic stay is not warranted.

### CONCLUSION

Diamond Quest is a creditor in the Kascos' bankruptcy case with a claim that can be paid through their Chapter 13 plan. Even though the redemption period for the tax debt expired 60 days after the Kascos filed their bankruptcy petition, and even though the tax debt was not paid in full prior to expiration of the redemption period, pursuant to the provisions of Chapter 13 the Kascos may pay that tax debt during the term of their confirmed plan. Cause does not exist to modify the automatic stay, and consequently Diamond Quest's motion for relief from the stay is denied.

Date: Nov. 8, 2007

_____
PAMELA S. HOLLIS
United States Bankruptcy Judge

12